**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**
**Case No. 7:19-cv-00105-FL**

| | |
|---|---|
| **GAIL SMITH,** individually and on behalf of similarly situated persons,<br><br>        Plaintiff,<br><br>**v.**<br><br>**SOUTHEASTERN PIZZA PEOPLE, INC.,**<br>**d/b/a "Domino's Pizza" and JOHN E. RIDGE,**<br><br>        Defendants. | <u>**JOINT MOTION FOR FINAL**</u><br><u>**APPROVAL OF SETTLEMENT**</u><br><u>**AGREEMENT**</u> |

Plaintiff Gail Smith, individually and on behalf of similarly situated persons ("Plaintiff"), together with Defendants Southeastern Pizza People, Inc., and John E. Ridge (together "Defendants"), by and through their undersigned counsel, respectfully request that this Court grant final approval of the Settlement and Release Agreement ("Agreement") [previously filed as sealed Dkt. #18] reached by the Parties to this action, including payment of reasonable attorneys' fees and costs. As set forth below, the Agreement is fair and reasonable and should be approved by the Court. Accordingly, the Parties respectfully request the Court issue an Order:

(1)     certifying for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23 and Section 216(b) of the Fair Labor Standards Act ("FLSA"), the following Class:

> All delivery drivers who worked for Defendant Southeastern Pizza People, Inc. from June 11, 2016, through April 30, 2020.

(2)     granting final approval of the Agreement;

(3)     approving distribution of the Net Settlement Fund, as defined in the Agreement, to the Plaintiff and Authorized Claimants;

(4)     approving a participation award payment in the amount of $5,000.00 to Gail Smith;

(5)     approving payment of the actual costs of the Settlement Claims Administrator and

Plaintiff's Counsel in an amount not to exceed $15,000.00;

(6)     approving attorneys' fees to Class Counsel[1] in the amount that is equivalent to 30% of the Total Settlement Amount; and

(7)     entering a judgment dismissing this case with prejudice in accordance with the terms of the Agreement.

## I.     <u>INTRODUCTION</u>

This class and collective action lawsuit for unpaid minimum wages against Defendants Southeastern Pizza People, Inc., d/b/a Domino's, and John E. Ridge ("Defendants") was settled following a mediation between the Parties, subject to the Court's approval. On April 30, 2020, the Court granted the Parties' Joint Motion For Preliminary Approval of Settlement Agreement. (Dkt. #21) and issued an Order that:

(1)     authorized the Parties to send notice of the Agreement to the Settlement Class Members.

(2)     approved the Notice of Class Action Settlement and proposed Claim Form as set forth as an "Exhibit" to the Agreement;

(3)     authorized for a third-party Settlement Claims Administrator, as agreed to by the Parties pursuant to the terms of the proposed Agreement, to send settlement notices to all Settlement Class Members containing the court's approved Notice, Claim Form, and a postage paid return envelope addressed to the Settlement Claims Administrator pursuant to the terms of the Agreement;

(4)     approved the proposed schedule and procedure for the final approval of the proposed Agreement. (Dkt. # 21)

Pursuant to the Court's Order dated April 30, 2020 (Dkt. #21), the Parties notified all Class

---

[1] The term "Class Counsel" refers to the attorneys who represent Plaintiffs and the Class Members.

Members of the date and time of the Fairness Hearing, along with contact information to obtain additional information regarding the Fairness Hearing. *See generally*, declaration of Third Party Administrator, attached hereto as **Exhibit A**. The Parties have fully complied with the terms of the Court's Order. There are no objections to the Agreement. Similarly, no Class Member has requested exclusion from the settlement or to participate in the Fairness Hearing. For the reasons set forth below, the Court should grant the Parties' motion.

## II.     BACKGROUND

Plaintiff filed this lawsuit ("the Litigation") on behalf of herself and similarly situated delivery drivers who were hired to deliver pizzas for Defendants. Plaintiff alleges Defendants violated the Fair Labor Standards Act ("FLSA") and related state laws by failing to pay them and other similarly situated delivery drivers the lawful and applicable minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendants.

The Parties participated in an alternative dispute resolution ("ADR") process that included a full-day in-person mediation before an experienced mediator, Kay Wolf, Esq., that took place in Charlotte, North Carolina. Prior to the mediation, the Parties engaged in discovery that included the production of all necessary class-wide data in order for Plaintiff to calculate class-wide damages, which Plaintiff shared with Defendants prior to the mediation. Based on this information, Plaintiff was able to review, analyze and formulate potential damage calculations under the FLSA and state law. Utilizing these calculations, Plaintiff concluded she had sufficient information concerning Plaintiff's claims and Defendants' defenses from which to reach a fair settlement of this matter. Following this full-day successful mediation session, the Parties' counsel negotiated the full settlement terms at arm's-length over the following two months. The terms of the Parties' settlement are set forth in the Parties' Agreement [previously filed as sealed Dkt. #18].

Defendants contend that their reimbursements to delivery drivers are reasonable

3

approximations of their automobile expenses and do not cause delivery drivers' wages to fall below the minimum wage. The Parties dispute the applicability of potential penalties, including liquidated damages. Defendants further contend that even if liability were established by Plaintiff, which they deny, they acted in good faith and that a two-year, as opposed to an extended, statute of limitations should apply to Plaintiff's claims. If the Court were to accept these arguments, it would negate a substantial percentage of alleged damages in the case and disqualify a large number of delivery drivers who were employed by Defendants outside of the two-year federal statutory period.

Notwithstanding these defenses, Plaintiff was able to obtain a recovery for all eligible Settlement Class Members who were employed by Defendants during the three-year period preceding the filing of the Complaint through the date of Preliminary Approval. Plaintiff respectfully submits that this Motion should be granted because the proposed Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness.

## III.     THE TERMS OF THE AGREEMENT

The Parties negotiated the Agreement on behalf of a Settlement Class of Delivery Drivers defined as:

> All delivery drivers who worked for Defendant Southeastern Pizza
> People, Inc. from June 11, 2016, through April 30, 2020.

The Agreement allowed delivery drivers to participate in the settlement on a claims-made basis, tracking the settlement structure that was previously approved in *Chenkus v. Prairie Pizza, Inc. dba Domino's*, 3:17-cv-00723 (W.D. NC) (similarly approving claims made structure, service awards of $5,000 and $2,500 to each named plaintiff, and approving of attorneys' fees request of up to 33.3% of the total fund). If approved by the Court and pursuant to the Agreement, the approximate distribution of the Maximum Settlement Amount is as follows:

1.     Plaintiff and the Authorized Claimants will receive their *pro rata* share of the

   previously-negotiated and approved FLSA fund, which will be distributed according

to the total delivery miles driven by each Settlement Class Member;

2.     Non-Claimants will each receive a negotiated and previously approved minimum payment from the Rule 23 Fund and still remain eligible to participate as an Authorized Claimant until the Contingent Fund has been depleted and during Contingent Fund Period;

3.     The Settlement Claims Administrator will receive approximately $ $7,674.22;

4.     Plaintiff Gail Smith will receive $5,000.00 as a service payment in recognition of her service as a Class Representative;

Class Counsel will receive 30% of the total settlement amount and be reimbursed advanced litigation costs and expenses, which are $5,166.75 to date. Collectively, the costs of Class Counsel and the Settlement Claims Administrator are within the $15,000.00 limit provided for costs under the Settlement Agreement. This Court has already preliminarily approved the proposed settlement, and Class Members have received notice of the proposed settlement pursuant to the Court's Order. Zero Class Members have objected to the settlement. Zero individuals have requested to be excluded from the Settlement. The Court should finally approve the settlement for the additional reasons that follow.

## IV.   <u>THE COURT SHOULD APPROVE THE AGREEMENT</u>

### A. The Settlement Meets the Standard for Approval of FLSA Settlements

The standard for approval of an FLSA settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation and it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Latham v. Branch Banking and Trust Co.*, 2014 WL 464236, at *1 (M.D.N.C. Jan. 14, 2014). In evaluating whether a settlement is reasonable, adequate, and fair, a court should consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have

represented the plaintiff; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of the plaintiff's success on the merits and the amount of the settlement in relation to potential recovery. *Lomascolo v. Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009).

As a general rule, "[w]hen a settlement agreement has been the subject of arm's-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement." *Houston v. URS Corp.*, 2009 WL 2474055, at *5 (E.D. Va. Aug. 7, 2009).

### 1. The Parties Have a *Bona Fide* Dispute

Court approval of FLSA settlements requires that the settlement resolve a *bona fide* dispute over FLSA provisions. *Lomascolo*, 2009 WL 3094955, at *16 (citing *Lynn's Food Stores Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). Here, Plaintiff alleges Southeastern Pizza People, Inc. reimbursed its delivery drivers on a per mile basis for use of their personal automobiles at a rate that resulted in payment of wages below the federal minimum wage. Southeastern Pizza People, Inc. denies this allegation and maintains that it properly paid Plaintiff under the FLSA. Southeastern Pizza People, Inc. contends that their reimbursement methodology approximated the actual expense its delivery drivers incurred by using their personal vehicles. After evaluating the evidence, it is clear that significant factual and legal questions remain with respect to liability and damages under Plaintiff's theory of the case. Accordingly, the Court should decide that a bona fide dispute exists between the parties.

### 2. The Settlement is Reasonable, Adequate, and Fair

The Settlement was negotiated at arm's length by experience counsel concerning *bona fide* disputes between their clients with respect to liability and amounts due, assuming FLSA violations

had occurred. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000)). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Frank*, 228 F.R.D. at 186 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also, e.g., Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 411 (D. Md. 2014) ("Here, the amount provided in [the settlement] is fair and reasonable in light of the particular circumstances of the case, including Duprey's recognition of the strong defenses asserted by Scotts, as explained above.").

The Maximum Settlement Amount obtained via mediation reflects 1) the fact that Defendants would have vigorously contested the merits of Plaintiff's FLSA claims; 2) that Defendants contend the shorter two-year statute of limitations for non-willful violations of the FLSA would have been appropriate, which would significantly reduce – or eliminate – many Class Members' possible recovery, in large part because many eligible delivery drivers worked only during the third year and because a large number of miles were driven during the third year; and 3) the mediator's assessment regarding Defendants' inability to withstand a higher judgment. As further demonstrated below, the Agreement is reasonable, adequate, and fair.

### B. The Settlement Meets the Requirements of Rule 23(e) For Settlement Purposes

Federal Rule of Civil Procedure 23(e) provides that a class action can be settled only with court approval. "In approving proposed class action settlements pursuant to Federal Rule of Civil Procedure 23(e), courts generally employ a two-step approach." *McLaurin v. Prestage Foods, Inc.*, 2011 WL 13146422, *2 (E.D.N.C. Nov. 9, 2011) (internal citations omitted). "First, the court engages in a preliminary approval analysis "to determine whether the proposed settlement is within the range

of possible approval or, in other words, whether there is probable cause to notify the class of the proposed settlement . . . Second, after preliminary approval is granted and the class notified, the court holds a 'fairness' hearing, where all interested parties may be heard on the proposed settlement . . . After the fairness hearing, if the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *Id*. "The Fourth Circuit Court of Appeals applies a two-part test to determine whether a proposed settlement conforms to the requirements of Federal Rule of Civil Procedure 23(e) by considering (1) fairness, which focuses on whether the proposed settlement was negotiated at arm's length; and (2) adequacy, which focuses on whether the consideration provided to the class members is sufficient." *Id*. at \*3. While approval of a proposed class action settlement is a matter of discretion for the trial court, there is a "general principle that settlements are to be encouraged." *U.S. v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). In consideration of these factors, approval of the Settlement Agreement is warranted.

### 1. The Proposed Settlement Was Honestly and Fairly Negotiated

"In order to determine whether a proposed settlement is fair to the parties, courts in the Fourth Circuit consider: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the type of case at issue." *McLaurin*, 2011 WL 13146422 at \*3 (citing *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158–59 (4th Cir. 1991). Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. *See* **Exhibit B, Declaration of Jay Forester**. The Parties investigated the merits of the claims and Defendants' defenses and engaged in mediation. Prior to mediation, the Parties spent months debating the claims, and exchanging informal discovery and information in order to evaluate the potential claims. Defendants produced all necessary class-wide data in order for Plaintiff to calculate class-wide damages, which Plaintiff shared with Defendants prior to the mediation. Following a full-day mediation session, the Parties' counsel continued to negotiate the full settlement terms at arm's-

8

length over the following months, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. Both Parties were in a sufficient position to evaluate the merits and defenses, and vigorously debated their positions during the all-day mediation. As such, this Court should find the settlement was reached honestly and fairly between the Parties. *See In re Jiffy Lube*, 927 F.2d at 159 (affirming class action settlement as fair even though settled early in litigation prior to formal discovery because of the parties' informal discovery and experience of counsel); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975), *cert. den.*, 424 U.S. 967 (1976) (the opinion and recommendation of experienced class counsel "should be given weight in evaluating the proposed settlement.").

## 2. Serious Questions Of Law And Fact Exist, Placing The Ultimate Outcome Of This Action In Doubt

Plaintiff believes that the claims are strong but recognizes that success is not guaranteed. With respect to the merits of Plaintiff's claims, Plaintiff believes that she will prevail in demonstrating that Class Members were not properly reimbursed for miles they incurred in their own vehicles on Defendants' behalf. Defendants, however, contend that they fully complied with applicable minimum wage requirements and believe numerous factors could preclude class-wide treatment. Nonetheless, while Defendants believe that their defenses are strong, they recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

The complexity, expense, and likely duration of this litigation also weighs heavily in favor of the Court finding that the settlement is adequate, fair, and reasonable. Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. First, the Parties dispute whether the three-year limitations period under the FLSA applies, or whether the two-year period for non-willful violations under the FLSA, or the two-year period under North Carolina's Wage and Hour Act would be applicable in this matter. Second, the Parties dispute whether this case could be tried on a class-wide basis. Finally, the Parties dispute the applicability of

potential penalties, including liquidated damages. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, this also weighs in favor of approval of the Settlement. *See* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.50 (4th ed. 2002) ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

3. <u>**The Class Recovery is Adequate**</u>

Approval of the settlement is appropriate in light of the adequacy factors: (1) the relative strength of the Plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the Plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; and (4) the solvency of the Defendants and the likelihood of recovery on a litigated judgment. *See In re Jiffy Lube*, 927 F.2d at 159.

Under the Settlement (submitted under seal per the agreement), Class Members will receive payments of approximately double the amount of reimbursement they initially received, and will be calculated based on the miles actually driven by them. This is a significant recovery for each Class Member, especially in light of Defendants' defenses that its reimbursement model was adequate under the wage and hour laws prior to settlement. The allocation model also ensures Class Members receive a fair and adequate amount based on the miles actually driven by them.

The issues here are complex and will be vigorously contested, resulting in significant time and expense if the litigation continues. The Parties would each need to hire experts to review the voluminous records of reimbursements and expenses incurred by class members driving numerous different models of cars. These experts will then need to opine as to what the "reasonable" reimbursement rate is for Class Members. Barring a settlement, the Parties would need to prepare for and conduct a trial with numerous witnesses, experts, and records. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation. Given these risks, further litigation

could result in no recovery for Class Members or a significant judgment against Defendants which could bankrupt them, leaving nothing for the Class Members to recover. For these reasons, the value of an immediate and certain settlement far outweighs the uncertainty of any future relief.

## V.    CONCLUSION

The Settlement is fair, adequate, and reasonable.  It will result in considerable payments to Plaintiff and Authorized Claimants; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's-length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation and through the assistance of an equally experienced mediator.  For the foregoing reasons, the Parties respectfully request that the Court finally approve the Settlement.

RESPECTFULLY SUBMITTED,

/s/ Jacob J. Modla

Jacob J. Modla, Esq.
The Law Offices of Jason E. Taylor P.C.
454 S. Anderson Rd., Suite 303
Rock Hill, South Carolina 29730
Phone: (803) 328-0898
Fax: (828) 327-9008
jmodla@jasonetaylor.com
State Bar No. 17534

Jay Forester, Esq.
Forester Haynie PLLC
400 N. St. Paul Street, Suite 700
Dallas, Texas 75201
Phone: (214) 210-2100
Fax: (214) 346-5909
jay@foresterhaynie.com
Texas State Bar No. 24087532

**ATTORNEYS FOR PLAINTIFF
AND THE PROPOSED CLASS**

/s/ Hagood Tighe
Hagood Tighe, Esq.
**FISHER & PHILLIPS LLP**

11

227 West Trade Street, Suite 2020
Charlotte, NC 2 8202
Telephone:  (704) 334-4565
Fax:  (704) 334-9774
E-mail:  htighe@fisherphillips.com


*/s/ Kathleen McLeod Caminiti*
Kathleen McLeod Caminiti, Esq.
(*pro hac vice*)
**FISHER & PHILLIPS LLP**
430 Mountain Avenue, Suite 303
Murray Hill, NJ 07974
Telephone:  (908) 516-1050
Fax:  (908) 516-1051
E-mail:  kcaminiti@fisherphillips.com

### ATTORNEYS FOR DEFENDANTS


## CERTIFICATE OF SERVICE

A copy of the foregoing document was electronically served on all counsel of record.

*/s/* Jacob J. Modla
Jacob J. Modla, Esq.